USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
DAVID MELENDEZ,                                                    :
:
Plaintiff,                                                         :
:                         22-cv-10679 (LJL)
-v-                                                                :
:                         OPINION AND ORDER
ROCKAWAY MAINTENANCE PARTNERS CORP.,                               :
ROCKAWAY MAINTENANCE CORP., BRIGHTON                               :
8TH PARTNERS, LLC, SIMEON FARBER a/k/a SIM                         :
FARBER a/k/a SAM FARBER, and URI DREIFUS,                          :
:
Defendants.                                                        :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

This is a labor law action brought under the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff David Melendez ("Plaintiff") claims that Rockaway Maintenance Partners Corp., Rockaway Maintenance Corp., Brighton 8th Partners, LLC, Simeon Farber, and Uri Dreifus (collectively, "Defendants") failed to pay overtime and minimum wages under the FLSA and the NYLL, failed to provide wage statements and a wage theft notice due under the NYLL, and retaliated against him contrary to the NYLL. Dkt. No. 13 ("Amended Complaint" or "Am. Compl.") ¶¶ 2, 104–108. Plaintiff alleges that throughout his employment with Defendants, he regularly worked more than 40 hours per week, but that he was consistently paid a flat rate of $600 per week, representing an hourly wage of $15.50 for forty hours per week. Id. ¶¶ 38–41. As a result, Plaintiff alleges, his effective hourly wage fell below the required minimum wage under the FLSA and the NYLL, and he received no overtime compensation for hours worked in excess of 40 hours per week. Id. ¶ 45. Plaintiff also alleges

that Defendants failed to provide him with accurate paystubs and a wage theft notice, which he was due under the NYLL. *Id.* ¶¶ 49–52.

Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, arguing that all of Plaintiff's claims have been released. Dkt. Nos. 38, 41. Their motion is unopposed. For the following reasons, the motion for summary judgment is granted in part and denied in part, without prejudice to renew.

## BACKGROUND

The following facts, drawn from Defendants' Local Rule 56.1 statement are assumed true for purposes of this motion.

Defendants are maintenance and property ownership companies that provide building maintenance to their customers. Dkt. No. 40 ¶ 2. Plaintiff was formerly employed by Rockaway Maintenance as a building superintendent from about April 2017 until March 2021, when he resigned his employment. *Id.* ¶ 1. Nearly one year after the end of his employment, on or around February 13, 2022, Plaintiff sent a text message to Simeon Farber, an employee of Rockaway Maintenance who is currently a Manager, Dkt. No. 39 ¶ 1, that informed Farber that Plaintiff was about to send a "lawyer's letter" alleging claims under federal and state labor laws and asked if Farber would prefer to settle those claims directly and privately. Dkt. No. 40 ¶ 3; *see* Dkt. No. 39 ¶ 4. Plaintiff texted Farber: "[W]e can settle right now for 20k and ill sign the paper work saying I wont sue you guy and you dont owe me anything otherwise the lawyer wants 56k bec of whats on the paystubs." Dkt. No. 39-1 at ECF p. 22. When Farber responded that he would either give Plaintiff $7,500 or spend that money on a lawyer of his own, *id.* at ECF p. 23, Plaintiff told Farber to "make it 7,500 tonight right now sam ill come to you just type up an agreement, or tomorrow comes and ill want 15k," *id.* at ECF p. 24. The next morning, Farber messaged: "If we are in agreement for the $7500 we will get the paper work started." *Id.* at ECF

2

p. 26. Plaintiff assented to the amount, *id.* at ECF p. 28, and arranged a time to enter into the settlement agreement, *id.* at ECF pp. 34–35; *see* Dkt. No. 40 ¶ 6. In the release (the "Release"), Plaintiff agreed to settle all of his Federal and State wage claims with Rockaway Maintenance Corp., its related companies, and its employees in exchange for a single payment of $7,500. Dkt. No. 40 ¶ 4; *see* Dkt. No. 39-2 at ECF p. 2. The parties signed the Release on February 16, 2022. Dkt. No. 40 ¶ 5. The Release purports to govern the terms of Plaintiff's "separation of employment from [Rockaway Maintenance Corp.], including the resolution of any claims for severance, unpaid wages and overtime that may (or may not) be due under the federal Fair Labor Standards Act and New York State Labor Law." Dkt. No. 39-2 at ECF p. 2. It provides for a "settlement" payment of $7,500 to Plaintiff in exchange for Plaintiff's release of claims he has against Rockway Maintenance, defined as the "Company." *Id.*[1] The Release reads as follows:

> In consideration of the promises, payments and actions of the Company set out in this Letter and other good and valuable consideration, the receipt of which is hereby acknowledged, you, with respect solely and only to conduct that has arisen on, or prior to, the date this Letter is executed, fully and forever releases, relieves, waives, relinquishes, and discharges the Company from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands whatsoever in law or in equity, with respect to any and all claims concerning your compensation, including, any and all wage and hour claims arising under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act, as well as claims for minimum wages, overtime, commissions, unpaid wages, whether based on common law or otherwise, and all claims for wage notice & statement violations, improper deductions, travel time, spread of hours pay, bonuses, expenses, reimbursements, gratuities, tip credits, tip allowances, service charges and retained gratuities during your employment with the Company and any other compensation or wages or any other claims whatsoever, from the beginning of time to the Settlement Date, provided, however, that nothing in this Letter,

---

[1] Specifically, the Company is defined to refer to "Rockaway Maintenance Corp., Rockaway Maintenance Partners Corp. and any and all of its subsidiaries, divisions, related companies, predecessors, successors, assigns, current or former employees, agents, shareholders, officers, directors and representatives." Dkt. No. 39-2 at ECF p. 2 n.1.

3

including this paragraph, shall remise, release, or discharge a claim to enforce this Letter or any right hereunder.

*Id.* The Release states that Plaintiff and the Company "are entering into this Letter solely for the purpose of avoiding and burdens and expenses of protracted litigation." *Id.* ¶ 4.

This lawsuit followed nearly a year later.

## DISCUSSION

Defendants argue that they are entitled to summary judgment on Plaintiff's claims on the grounds that Plaintiff released all claims against them prior to the commencement of this litigation.

To prevail on a motion for summary judgment, the movant bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex*, 477 U.S. at 323; *see also Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 515 (2d Cir. 2023).

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Local Rule 56.1(a). Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement

of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* 56.1(b).  All assertions in a Local Rule 56.1 statement "must be followed by citation to evidence which would be admissible." *Id.* 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *Id.* 56.1(c).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Id.* at 244 (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)) (emphasis in original).

Two different bodies of law are relevant to Defendants' argument that Plaintiff has released the claims asserted in this case.

First, under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (2011) (quoting *Global Mins. & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (1st Dep't 2006)).  The language of the release must be "clear and unambiguous." *Id.*  "[A] release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made." *Id.* (internal quotation marks omitted); *see Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335,

5

362–63 (S.D.N.Y. 2022), *amended*, 2022 WL 2479110 (S.D.N.Y. July 6, 2022). No consideration need be paid for the release; nor need the release be under seal. N.Y. Gen. Oblig. L. § 15-303 (a release "shall not be invalid because of the absence of consideration or of a seal"). As a general matter, a release that is valid under New York law can release claims under federal law. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993) ("While it is clear that federal law governs the validity of releases of federal causes of action, we . . . look to state law to provide the content of federal law." (citations omitted)); *Fernandez v. City of New York*, 502 F. App'x 48, 50 (2d Cir. 2012) (summary order) (same). "A signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Centro Empresarial Cempresa S.A.*, 952 N.E.2d at 1000 (cleaned up).

Second, to be effective to bar claims under the FLSA, a release that is valid under New York law must not violate federal law. *See D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114 (1946) (rejecting the argument that a release that was valid under New York law was effective as against FLSA claims); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 713 (1945) (same). "In *Brooklyn Savings* and *Gangi*, the Supreme Court held that private contractual waivers of worker's FLSA rights were against public policy." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 407 (2d Cir. 2019). The FLSA provides for liquidated damages. 29 U.S.C. § 216(b). "To permit an employer to secure a release from the worker who needs his wages promptly w[ould] tend to nullify the deterrent effect which Congress plainly intended that Section 16(b) [of the FLSA] should have." *O'Neil*, 324 U.S. at 709–10. If an employer could require an employee in advance to waive the employee's right to minimum wages or overtime pay or liquidated damages, that "would nullify the effectiveness of the Act." *Id.* at 712. At the same time,

6

however, there is no requirement that two parties "wishing to settle an FLSA dispute out-of-court without bringing suit, obtain judicial or agency approval for their settlement." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 402 (S.D.N.Y. 2017). And there is a "strong judicial policy in favor of settlements." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir.1998)); *see also In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011) (summary order) (citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)).

The Second Circuit has not spoken clearly to the review required before a pre-litigation release of a FLSA claim is given effect in a subsequent litigation raising claims covered by that release. Where parties have agreed on a settlement pursuant to which the employee promises to dismiss an already-filed FLSA claim and to release future claims, such a settlement must be reviewed by the federal court for fairness before the case is dismissed. *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). That rule applies regardless of whether the dismissal is with or without prejudice. *See Samake*, 24 F.4th at 810. Where the settlement results in a Rule 68 offer of judgment, by contrast, no judicial review is required before judgment is entered. *Mei Xing Yu*, 944 F.3d at 414. However, "[b]y its terms, *Cheeks* . . . applies only to settlement agreements that occur within the context of Rule 41. And Rule 41, in turn, does not apply to settlement agreements entered into entirely outside the litigation context." *Gaughan*, 261 F. Supp. 3d at 400; *see also Young Min Lee v. New Kang Suh Inc.*, 2020 WL 5504309, at *2 n.2 (S.D.N.Y. Sept. 11, 2020) ("*Cheeks* is 'confined to the Rule 41 context'" (quoting *Barnhill v. Fred Stark Estate*, 2015 WL 5680145, at *1 (E.D.N.Y. Sept. 24, 2015))).[2]

---

[2] A 1949 amendment to FLSA gives the Department of Labor the authority to permit the waiver

The Second Circuit has noted that the Supreme Court has distinguished between the impermissibility of "waivers" of an employee's rights under the FLSA and "the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." *Mei Xing Yu*, 944 F.3d at 404; *see Cheeks*, 796 F.3d at 202–03 (noting that the Supreme Court has "declined to opine as to 'the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment'" (quoting *D.A. Schulte*, 328 U.S. at 114–15)). The majority of courts in this Circuit recently have held that a private pre-litigation release resolving a bona fide dispute between the parties over the number of hours worked or the regular rate of employment is enforceable. *See Milien v. City of New York*, 2023 WL 6050119, at *12 (E.D.N.Y. Sept. 15, 2023); *Young Min Lee*, 2020 WL 5504309, at *6; *Tortomas v. Pall Corp.*, 2020 WL 2933669, at *4 (E.D.N.Y. May 31, 2020); *Gorczya v. NVR, Inc.*, 2017 WL 11435971 (W.D.N.Y. July 13, 2017); *Gaughan*, 261 F. Supp. 3d 390; *cf. Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (distinguishing "a fair and reasonable compromise of disputed issues" from a "mere waiver of statutory rights" (internal quotation marks omitted)); *accord Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012) ("Appellants' FLSA rights were adhered to and addressed through the Settlement Agreement, not waived or bargained away."). *But see Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("[T]o

---

of FLSA rights as part of a private settlement. 29 U.S.C. § 216(c); *see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). But the Second Circuit has stated that "[t]he amendment only grants *the DOL* authority to supervise private FLSA settlements with finality; it says nothing about whether courts must approve stipulated judgments or other settlements or dismissals." *Mei Xing Yu*, 944 F.3d at 409.

approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.").

Courts look to several indicia to distinguish a mere waiver of statutory rights which is unenforceable from a bona fide compromise and settlement of a bona fide dispute between the parties which is enforceable.  At the most basic level, there must be a dispute between the employer and employee over issues such as the number of hours worked or the regular rate of pay.  There was no dispute in *D.A. Schulte*, 328 U.S. at 114–15, and *O'Neil*, 324 U.S. at 703, as to the number of hours worked or the regular rate of pay.  The employer agreed that the employee was underpaid and agreed on the amount by which the employee was underpaid.[3]  In the absence of evidence that the employer has disputed the actual damages to which the employee is entitled under the FLSA, there is no bona fide dispute for a settlement agreement to resolve.  *See Tortomas*, 2020 WL 2933669, at *5 ("[W]here pre-litigation FLSA releases are enforced, there is often at least some evidence of a bona fide dispute over the number of hours worked and/or the employee's entitlement to overtime.").  Consequently, a release would constitute a mere waiver of statutory rights. For similar reasons, courts look to whether the employee was aware of her rights under the FLSA and "whether the employee received a substantial monetary benefit in exchange for the release of her claims." *Young Min Lee*, 2020 WL 5504309, at *6.  In one of the several cases decided in *O'Neil*, the employer paid the employee just the overtime pay the

---

[3] Rather, the Court held in *D.A. Schulte* that the FLSA "precludes a bona fide settlement of a bona fide dispute over the *coverage* of the Act on a claim for overtime compensation and liquidated damages where the employees receive the overtime compensation in full." 328 U.S. at 110 (emphasis added).

employer agreed had been unlawfully withheld. 324 U.S. at 700. In another, the employer paid less than the amount the employer knew the employee was owed for minimum wages and overtime pay. *Id.* at 701. Likewise, in *D.A. Schulte*, the employer paid the employees overtime owed, but not the liquidated damages available under the FLSA. 328 U.S. at 111. That the employee does not know of her FLSA rights and that she is paid only a nominal amount for an agreement that includes a waiver of rights is suggestive that the agreement is a severance agreement and not a bona fide settlement and compromise of a bona fide dispute. *See Young Min Lee*, 2020 WL 5504309, at *6 (denying summary judgment based on a release when the plaintiff "was entirely unaware of her rights under the FLSA when she signed the Settlement Agreement . . . [, and] understood the payment to be a severance payment made due to her recent termination"). Other indicia of whether an agreement that includes a release may be considered a bona fide compromise of a bona fide dispute include whether the employee had legal representation, whether the employee engaged in negotiations with her employer, and whether the employee had time to consider her options. *Id.* The presence of each of those factors is suggestive that the release resolved a bona fide dispute and is enforceable. Courts also have looked to whether the settlement was reached as a result of a fair bargaining process. *See Milien*, 2023 WL 6050119, at *12; *Lee v. New Kang Suh, Inc.*, 2022 WL 4534632, at *4 (S.D.N.Y. Sept. 28, 2022).[4]

    Defendants have not demonstrated their entitlement to summary judgment on Plaintiff's FLSA claims. On its face, the Release covers all of the Defendants and all of Plaintiffs' FLSA claims. The parties named in the Amended Complaint include Rockaway Maintenance Corp.

---

[4] The Court need not decide on this motion the extent to which the FLSA requires review of whether the settlement was reached as the result of a "fair bargaining process" and whether the employee must have had counsel in order for the release to be enforceable.

and Rockaway Maintenance Partners Corp., who are named in the Release.  Dkt. No. 39-2 at ECF p. 2 n.1.  The Amended Complaint also named Simeon Farber and Uri Dreifus, who are alleged to be the owners and operators of Rockaway Maintenance Corp., Rockaway Maintenance Partners Corp, and Brighton 8th Partners, LLC.  Am. Compl. ¶¶ 21–26.  They too are encompassed within the Release.  *See* Dkt. No. 39-2 at ECF p. 2 n.1 (extending the Release to "current or former employees, agents, shareholders, officers, directors and representatives").  Brighton 8th Partners is alleged to be a maintenance and property ownership company owned and operated by Farber and Dreifus where Plaintiff worked as superintendent.  Am. Compl. ¶¶ 23, 26, 35.  It fits comfortably within the Release's reference to "related companies."  Dkt. No. 39-2 at ECF p. 2 n.1.  The Release covers the FLSA overtime and minimum-wage claims in the Amended Complaint.  *See id.* at ECF p. 2 (releasing "claims for minimum wages [and] overtime").

However, Defendants have not demonstrated that the Release was made as the result of a bona fide compromise and settlement of a bona fide dispute over hours or pay.  Although Defendants' Local Rule 56.1 Statement cites evidence that Plaintiff had counsel and was aware of his rights under federal and state labor laws, *see* Dkt. No. 39 ¶ 4 (asserting that prior to the settlement, Plaintiff sent Defendants a "text message informing [them] that he was about to send a 'lawyer's letter' alleging claims under Federal and State labor laws"), it does not assert—much less support with evidence—that there was a bona fide dispute over Plaintiff's hours or pay.  Defendants' Local Rule 56.1 Statement is also bereft of any assertion or evidence that the $7,500 payment which Plaintiff received was a "compromise or settlement" of the pay to which Plaintiff claims he is entitled.  Instead, from Defendants' Local Rule 56.1 Statement, it is equally probable that Defendants paid Plaintiff in full in exchange for a release that would relieve

11

Defendants of the requirement to pay liquidated damages.[5]  Finally, even if there were a bona fide dispute over liability, the Local Rule 56.1 Statement does not speak to any other factors that would demonstrate that the Release was the result of a bona fide compromise or settlement. Thus, based on their motion and statement of undisputed facts, Defendants are not entitled to summary judgment on Plaintiff's FLSA claims.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed.").

The Court reaches a different result on the NYLL claims.  Most of these claims fall within the terms of the Release.  The alleged violations of the NYLL's overtime, minimum wage, paystub, and wage theft notice guarantees all fit within the broad set of wage-related claims subject to the Release.  Dkt. No. 39-2 at ECF p. 2.  Additionally, the Release extends to most, but not all, of Plaintiff's NYLL retaliation claim.  In that claim, Plaintiff avers that "Defendants retaliated against Plaintiff for making complaints about both Defendants' failure to pay minimum wage and overtime compensation, by (1) forcing Plaintiff to remain 'on-call' for 24 hours per day; (2) informally disciplining Plaintiff; (3) refusing to pay out accrued leave time upon Plaintiff's termination; and (4) terminating Plaintiff's employment."  Am. Compl. ¶ 106. As relief, Plaintiff seeks "the total amount of wages he would have earned but for Defendants' unlawful termination" plus liquidated damages, attorney's fees and costs, and pre- and post-judgment interest.  *Id.* ¶ 108.  The first three claims are subject to the Release.  The Release

---

[5] Because the Court need not "consider what the [Defendants] fail to point out" in their Local Rule 56.1 statement, the Court declines to "conduct an assiduous [independent] review of the record" in deciding the instant motion.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).

encompasses "any and all claims concerning [Plaintiff's] compensation including, any and all wage and hour claims arising under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act, as well as claims for minimum wages, overtime, commissions, unpaid wages, whether based on common law or otherwise, and all claims for wage notice & statement violations, improper deductions, travel time, spread of hours pay, bonuses, expenses, reimbursements, gratuities, tip credits, tip allowances, service charges and retained gratuities during your employment with the Company and any other compensation or wages or any other claims whatsoever, from the beginning of time to *the Settlement Date*." Dkt. No. 39-2 at ECF p. 2, ¶ 2 (emphasis added). The Settlement Date is February 16, 2022, and post-dates the termination of Plaintiff's employment. But Plaintiff's claim that his termination was retaliatory does not fall within any of the categories of wage-based disputes described in the Release. Had the parties also wished to release potential claims of retaliatory termination, they could have drafted the Release to do so. *See, e.g.*, *Gonzalez v. Victoria G's Pizzeria LLC*, 2021 WL 8316282, at *1 (E.D.N.Y. Nov. 12, 2021); *Marquez v. Roberto's Rest. Corp.*, 2017 WL 5468760, at *3 (S.D.N.Y. Nov. 13, 2017); *Donovan v. Rite Aid of N.Y. Inc.*, 2013 WL 6183136, at *5 (S.D.N.Y. Nov. 14, 2013). The Court cannot "imply a term which the parties themselves failed to insert or otherwise rewrite the [Release]." *Aivaliotis v. Cont'l Broker-Dealer Corp.*, 817 N.Y.S.2d 365, 366 (2d Dep't 2006). Thus, all of the NYLL claims but the claim for illegally terminating Plaintiff's employment are covered by the Release.

An agreement releasing claims under the NYLL is not subject to the same public policy considerations that preclude waivers of statutory rights under the FLSA. *Young Min Lee*, 2020 WL 5504309, at *3; *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008); *Simel v. JP Morgan Chase*, 2007 WL 809689, at *4–5 (S.D.N.Y. Mar. 19, 2007). Instead, New

13

York law treats releases of NYLL claims as contracts, and courts considering contested releases will analyze them according to principles of contract law: "Such agreements may be overcome only if a plaintiff can demonstrate that they do not apply to her NYLL claims or that there is an equitable basis to vitiate their effect." *Young Min Lee*, 2020 WL 5504309, at *3; *Hummel*, 575 F. Supp. 2d at 570 ("Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not 'the product of fraud, duress, or undue influence.'" (quoting *Skluth v. United Merch. & Mfr., Inc.*, 559 N.Y.S.2d 280, 282 (1st Dep't 1990))).

Here, Defendants are entitled to summary judgment in their favor on the NYLL claims covered by the Release. The Release expresses the clear and unambiguous intent of Plaintiff to settle and release the state law claims contained in his Amended Complaint. *See* Dkt. No. 39-2 at ECF p. 2. In exchange, Plaintiff received a lump-sum payment of $7,500. *Id.* Plaintiff does not oppose this motion for summary judgment, and so there is no reason to believe he was induced by fraud, duress, or undue influence to execute it. Therefore the Release is a valid and enforceable contract that bars all of Plaintiff's claims brought under the NYLL, except for the NYLL retaliation claim based on his termination.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART, without prejudice. The Clerk of Court is respectfully directed to close Dkt. No. 38.

SO ORDERED.

Dated: November 22, 2023
New York, New York

LEWIS J. LIMAN
United States District Judge