UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
DAVID MELENDEZ,                                                    :
                                                                   :
                         Plaintiff,                                :
                                                                   :          22-cv-10679 (LJL)
        -v-                                                        :
                                                                   :          MEMORANDUM AND
ROCKAWAY MAINTENANCE PARTNERS CORP.,                               :          ORDER
ROCKAWAY MAINTENANCE CORP., BRIGHTON                               :
8TH PARTNERS, LLC, SIMEON FARBER a/k/a SIM                         :
FARBER a/k/a SAM FARBER, and URI DREIFUS,                          :
                                                                   :
                         Defendants.                               :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Rockaway Maintenance Partners Corp., Rockaway Maintenance Corp., Brighton 8th Partners, LLC, Simeon Farber, and Uri Dreifus (collectively, "Defendants") move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment dismissing the amended complaint of Plaintiff David J. Melendez ("Plaintiff"). Dkt. No. 50. The motion is unopposed. For the following reasons, the motion is granted.

## BACKGROUND

The Court assumes familiarity with the prior proceedings in this case.

Plaintiff filed the complaint in this action on December 20, 2022, Dkt. No. 1, and an amended complaint on December 23, 2022, Dkt. No. 13. The amended complaint alleges that Defendants were building maintenance and property ownership companies for whom Plaintiff worked as a superintendent from April 2017 through February 2021. Dkt. No. 13 ¶¶ 3–5. Plaintiff alleges that Defendants failed to pay him appropriate minimum and overtime wages and

to provide him a wage notice at the commencement of his employment and accurate paystubs during his employment in violation of the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"). *Id.* ¶ 2.

On April 25, 2023, Defendants filed a motion for summary judgment. Dkt. No. 38. The motion was unopposed. The motion was based upon a release (the "Release") Plaintiff signed on February 16, 2022 (i.e., ten months before this lawsuit was filed), releasing all of Plaintiff's federal and state wage claims against the Defendants for a payment of $7,500. Dkt. No. 52 ¶ 10.[1] The Release's stated purpose was to govern Plaintiff's separation from Rockaway Maintenance Corp., "including the resolution of any claims for severance, unpaid wages and overtime that may (or may not) be due under the federal Fair Labor Standards Act and New York State Labor Law." Dkt. No. 52-1 at 2. The Release stated that the "Settlement Sum" of $7,500 was to be given to Plaintiff in exchange for Plaintiff's "release of any and all claims, controversies or legal actions as set forth below." Dkt. No. 52-1 ¶ 1. The Release further stated that:

> [Plaintiff] fully and forever releases, relieves, waives, relinquishes, and discharges the Company from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands whatsoever in law or in equity, with respect to any and all claims concerning your compensation, including, any and all wage and hour claims arising under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act, as well as claims for minimum wages, overtime, commissions, unpaid wages, whether based on common law or otherwise, and all claims for wage notice & statement violations, improper deductions, travel time, spread of hours pay, bonuses, expenses, reimbursements, gratuities, tip credits, tip allowances, service charges and retained gratuities during your employment with the Company and any other compensation or wages or any other claims whatsoever, from the beginning of time to the Settlement Date, provided, however, that nothing in this Letter, including this

---

[1] All citations are to the documents filed in connection with Defendants' renewed motion for summary judgment.

paragraph, shall remise, release, or discharge a claim to enforce this Letter or any right hereunder.

*Id.* ¶ 2. In the Release, Plaintiff also acknowledged that, after accepting the Settlement Sum, Plaintiff had received:

> [A]ll salary, over-time, wages, vacation pay, sick time pay, bonus payments, reimbursement of expenses, cash awards, incentive-type payments, vacation, compensation time, severance, enhancements and any other compensation payments, in whatever form, or any other consideration or value of any kind or type whatsoever, to which you are or may be entitled pursuant to any local, state or United States statute, regulation, law, constitution, principle of common law, or any other law or regulation, prior agreement, or any of the Company's policies or programs, except as otherwise expressly provided in this Letter.

*Id.* ¶ 3. Finally, Plaintiff agreed that he and Defendants entered into the Release "solely for the purpose of avoiding the burdens and expenses of protracted litigation." *Id.* ¶ 4.

On November 22, 2023, the Court granted in part and denied in part Defendants' initial motion for summary judgment by Opinion and Order. Dkt. No. 43. The Court granted the motion as to all of Plaintiff's NYLL claims aside from his claim that Defendants retaliated against him in violation of the NYLL for his complaints about Defendants' failure to pay him minimum wage and overtime compensation, which was not covered by the Release. *Id.* at 12–14. The Court held that "[t]he Release [otherwise] expresses the clear and unambiguous intent of Plaintiff to settle and release the state law claims contained in his Amended Complaint." *Id.* at 14. But the Court denied the motion for summary judgment on Plaintiff's FLSA claims. The Court concluded that "the Release covers all of the Defendants and all of Plaintiffs' FLSA claims." *Id.* at 10. However, it held that a release is enforceable as against FLSA claims only if it represents "a bona fide compromise and settlement of a bona fide dispute between the parties" and not "a mere waiver of statutory rights." *Id.* at 8–9 (citing *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 404 (2d Cir. 2019)). In their motion papers, Defendants had "not demonstrated

that the Release was made as the result of a bona fide compromise and settlement of a bona fide dispute over hours and pay." *Id.* at 11.

Yet the Court gave Defendants leave to file a renewed motion for summary judgment. Dkt. No. 45. Defendants have now done so. They have filed a notice of motion, a memorandum of law in support of that motion, and a declaration of the manager of Rockaway Maintenance, Simeon Farber. Dkt. Nos. 50–52. The Court accepts the statements of Mr. Farber as true for purposes of this motion. *See RTC Mortg. Tr. 1995-S/N1 v. Polmar Realty, Inc.*, 1996 WL 689281, at *1 (S.D.N.Y. Nov. 27, 1996) ("Plaintiff's motion for summary judgment is unopposed. Therefore, unless otherwise indicated, the following undisputed facts, taken from the Complaint as well as the affidavits, declarations and memorandum of law submitted in support of Plaintiff's motion for summary judgment, including exhibits attached thereto, will be deemed admitted for purposes of this motion."); *see also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 111 (2d Cir. 1992); *In re Towers Fin. Corp. Noteholders Litig.*, 996 F. Supp. 266, 275 (S.D.N.Y. 1998).

Farber negotiated the Release with Plaintiff. Dkt. No. 52 ¶¶ 9, 11, 19–20. He explains that Plaintiff contacted him by text message on or about February 13, 2022, nearly one year after Plaintiff's March 2021 resignation from Defendants. *Id.* ¶¶ 3–4. Plaintiff informed Farber that he was about to send a "lawyer's letter" alleging claims under federal and state labor laws and asked whether Farber, on behalf of Defendants, preferred to settle the claims directly and privately. *Id.* ¶ 4 & Ex. Although Plaintiff had never previously claimed that he was due overtime or was not paid for work he performed on behalf of Defendants, he now claimed that he never received overtime pay despite working more than 40 hours per week, whereas Defendants' position was that Plaintiff was properly paid for all hours he worked in accordance with federal

and state law. *Id.* ¶¶ 5–7. Defendants nonetheless resolved to settle the matter and asked Plaintiff what he believed he was owed with respect to his wage and hour claims. *Id.* ¶ 8. Plaintiff communicated that he would settle and resolve the dispute over the hours of pay for $7,500 and, after an arms-length negotiation, Plaintiff agreed to settle all of his federal and state wage claims with Rockaway for a single payment of $7,500. *Id.* ¶¶ 9–10.

The Release was prepared by Farber without the assistance of counsel. *Id.* ¶ 11, 20. Farber understood that Plaintiff had adequate information to assess the appropriateness of the resolution because he was claiming unpaid wages for himself. *Id.* ¶ 16. As to Defendants, even though Plaintiff did not have records or documents to substantiate his claims, Defendants believed that $7,500 represented a fair compromise to avoid the prospect of protracted litigation and an uncertain result. *Id.* ¶¶ 13, 17. Notably, in the Release, Plaintiff agreed that he had consulted with an attorney or waived his option to do so. *Id.* ¶ 20.

In January 2023, one month after Plaintiff filed this action, Plaintiff began sending Farber text messages seeking a payment of $15,000 to settle the matter. *Id.* ¶ 26. When Farber did not respond, Plaintiff sent Farber threatening text messages with pictures taken from outside Farber's house as well as images of a car of the same make and model as Farber's vehicle that was on fire and of a home that was on fire. *Id.* ¶¶ 27–29. Plaintiff then sent Farber messages that made direct threats to Farber's life and that of his family members. *Id.* ¶ 30. Farber involved the police. *Id.* ¶ 31. He has not seen or heard from Plaintiff since March 2023. *Id.* ¶ 32.

## DISCUSSION

The moving party is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When

determining whether there is a genuine issue of material fact, the court must construe the facts "in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023); *see also Bey v. City of New York,* 999 F.3d 157, 164 (2d Cir. 2021).  The movant bears the burden to establish that there are no genuine issues of material fact to be decided.  *Celotex*, 477 U.S. at 323.

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'"  *Id.* at 244 (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)) (emphasis in original).

In its November 2023 Opinion and Order, the Court laid out the principles to be applied when determining the effect of a purported pre-litigation release of FLSA claims.  Under FLSA, an employee's waiver of her statutory rights to a minimum wage and overtime pay, as well as to liquidated damages for failure to make those payments, is unenforceable.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.").  At the same time, there is a "strong judicial policy in favor of settlements" of even labor law claims, *see In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998), and parties may settle FLSA disputes out of court without judicial approval or supervision, *see Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 402 (S.D.N.Y. 2017).  Accordingly, a pre-litigation release of FLSA claims is

enforceable "if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." Dkt. No. 43 at 8 (quoting *Mei Xing Yu*, 944 F.3d at 404). Several factors inform whether the release is enforceable. "At the most basic level, there must be a dispute between the employer and employee over issues such as the number of hours worked or the regular rate of pay." *Id.* at 9. In addition, courts look to whether the employee was aware of her rights under FLSA and received a substantial monetary benefit in exchange for the release of her claims, whether the employee had legal representation, whether the employee engaged in negotiations with her employer, and whether the employee had time to consider her options. *Id.* at 9–10. "Courts also have looked to whether the settlement was reached as a result of a fair bargaining process." *Id.* at 10.

Defendants are entitled to summary judgment on Plaintiff's FLSA claims. As the Court previously held, the Release on its face covers all of Plaintiff's FLSA claims. *Id.* In their renewed motion, Defendants have also demonstrated that the Release was made as the result of a bona fide compromise and settlement of a bona fide dispute over hours and pay. Before the Release was signed, Plaintiff claimed that he was owed payment for overtime hours worked. Dkt. No. 52 ¶ 5. Defendants, however, took the position that Plaintiff was properly paid for all hours he worked in compliance with federal and state law. *Id.* at ¶ 6. In the exhibits attached to the Farber Declaration, Defendants include a contemporaneous text message from Farber in which he tells Plaintiff prior to the settlement, "I paid you every penny and you know it." Dkt. No. 52-1. The Release was not a "mere waiver of statutory rights." *Mei Xing Yu*, 944 F.3d at 404. Plaintiff had never previously made any claims for overtime, he did not have records or documentation to support his claims, and Defendants contended that Plaintiff was not entitled to

be compensated for the amounts claimed, but Defendants nevertheless agreed to settle the matter to avoid the cost and risk of litigation. Dkt. No. 52 ¶¶ 7, 13–14, 17.

Other indicia similarly support the existence of a bona fide settlement and not a mere waiver of statutory rights. Plaintiff evinced his knowledge of his FLSA rights; he reached out to Defendants rather than Defendants reaching out to him and he claimed that he was about to send a lawyer's letter asserting claims under federal and state labor laws. *Id.* ¶ 4. The settlement amount was not presented to Plaintiff on a take-it-or-leave-it basis. Defendants also provided Plaintiff a substantial benefit by paying Plaintiff more than Defendants believed Plaintiff was entitled because Plaintiff demanded that sum and Defendants acceded to it. *Id.* ¶¶ 6, 8–9; *cf. O'Neil*, 324 U.S. at 701 (holding a release constituted a waiver of statutory rights where, *inter alia*, the employer paid the employee less than the amount the employer knew the employee was entitled to). While it is unclear whether Plaintiff had counsel review the Release, he averred that he consulted with counsel or waived his right to do so and he represented that he had counsel prepared to file claims against Defendants. Dkt. No. 52 ¶¶ 4, 20.

The settlement was reached as a result of an arms-length negotiation and there is no evidence of coercion or duress. *Id.* ¶ 10. Indeed, the text messages attached as exhibits reflect vigorous negotiations between the parties. Plaintiff initiated the negotiations by writing, "we can settle right now for 20k and ill sign the paperwork saying i wont sue you guy and you dont owe me anything." Dkt. No. 52-1. When the Plaintiff felt the negotiations might fail, he wrote, "ok ill take as a no you dont want to settle out of court." *Id.* In the same exchange, Plaintiff also wrote, "im trying to settle out of court with you guys." *Id.* After sending several messages back and forth with Farber, Plaintiff texted, "make it 7,500 tonight . . . just type up an agreement." *Id.* Defendants did so, paying Plaintiff the full amount he sought. Dkt. No. 52 ¶ 9.

In short, Defendants have now supplied all of the information that was missing from their prior motion for summary judgment on Plaintiff's FLSA claims. Thus, Defendants are entitled to judgment dismissing those claims.

Because this Court has now dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law retaliation claim. *See Jun Chen v. Sushi 21 NY Inc.*, 2018 WL 6618174, at *4 (S.D.N.Y. Dec. 18, 2018); *Li ex rel. Musso v. Multicultural Radio Broad., Inc.*, 2023 WL 7902890, at *7 (S.D.N.Y. Nov. 16, 2023); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Consistent with the "values of judicial economy, convenience, fairness, and comity," *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013) (quoting *Cohill*, 484 U.S. at 350), "district courts routinely decline to exercise jurisdiction over related state claims once summary judgment is granted for the defendant on all of the federal claims," *Garcia v. Marc Tetro, Inc.*, 2020 WL 996481, at *3 (S.D.N.Y. Mar. 2, 2020); *see also Djurdjevich v. Flat Rate Movers, Ltd.*, 2020 WL 7027590, at *6 (S.D.N.Y. Nov. 30, 2020) (Nathan, J.). So too here: "Considering the foregoing factors, there is no justifiable reason for the Court to exercise supplemental jurisdiction over Plaintiff's remaining state law claim[]." *Tchernitsky v. Pigott*, 2019 WL 1492908, at *3 (E.D.N.Y. Mar. 31, 2019). The Court therefore dismisses that claim without prejudice. *See Martin v. Sprint United Mgmt. Co.*, 2017 WL 5028621, at *4 (S.D.N.Y. Oct. 31, 2017).

**CONCLUSION**

Defendants' renewed motion for summary judgment on the Plaintiff's FLSA claims, Dkt. No. 50, is GRANTED. The Plaintiff's remaining NYLL claim is DISMISSED without prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 50 and close this case.

SO ORDERED.

Dated: July 8, 2024
      New York, New York

                                            LEWIS J. LIMAN
                                    United States District Judge